Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Southen District of Iowa

Eastern Division

**RECEIVED**

JAN 17 2025

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

Case No. 3:25-cv-00008

*(to be filled in by the Clerk's Office)*

|  |  |
|---|---|
| Nan Li | ) |
| ───────────────────── | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
|  | ) |
|  | ) |
| The University of Iowa | ) |
| ───────────────────── | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

Jury Trial: *(check one)*  ☒ Yes   ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.   The Parties to This Complaint

#### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Nan Li |
| Street Address | 90 Circle Drive, #9 |
| City and County | North Liberty, Johnson County |
| State and Zip Code | Iowa, 52317 |
| Telephone Number | 785-424-0203 |
| E-mail Address | teddynan@gmail.com |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | The University of Iowa |
| Job or Title *(if known)* | Office of the General Counsel |
| Street Address | 120 Jessup Hall, 5 W. Jefferson Street |
| City and County | Iowa City, Johnson County |
| State and Zip Code | Iowa, 52242-1316 |
| Telephone Number | 319-335-3696 |
| E-mail Address *(if known)* | general-counsel@uiowa.edu |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Telephone Number
E-mail Address *(if known)*

## C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | SDS office The University of Iowa |
| Street Address | |
| | 141 University Capitol Centre, 201 S Clinton Street |
| City and County | Iowa City, Johnson County |
| State and Zip Code | Iowa, 52242 |
| Telephone Number | 319-335-1462 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒    Other federal law *(specify the federal law)*:
Section 1983

☐    Relevant state law *(specify, if known)*:
Iowa Code 216.6

☐    Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☒    Termination of my employment.

☐    Failure to promote me.

☒    Failure to accommodate my disability.

☒    Unequal terms and conditions of my employment.

☒    Retaliation.

☐    Other acts *(specify)*:    Harassment, workplace bullying, and unfair treatment with restricted access to job-related information. I received inadequate training and have been forced to work contrary to two doctors' medical restriction notes. Additionally, supervisors have made unfounded accusations against me. Please see the attached EEOC Charge narratives sent to the Defendant.

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

Since summer of 2023 and ongoing during my entire employment time  at the University of Iowa.

C.    I believe that defendant(s) *(check one)*:

☐    is/are still committing these acts against me.

☒    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒    race    Asian

☒    color    Yellow

☐    gender/sex

☐    religion

☒    national origin    China

☐    age *(year of birth)*    *(only when asserting a claim of age discrimination.)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

☒      disability or perceived disability *(specify disability)*

Sick building syndrome

E.      The facts of my case are as follows.  Attach additional pages if needed.

01/17/25

My Honor,

1 included two narratives to support my pleadings.

submitted.

1.  my rebutall ∧to Level - 2 Administrative Review meeting ( 7 page document )

2.  A narrative 1 submitted to EEOC on March 31st, 2024.  ( 3 Page document )

1. Wrongful discharge and retaliation claim in violating 42 U.S. Code § 12203

Mike Venzon and Vickie Houser are my two former supervisors. Laura Jaeger is an HR staff from the university's Labor Relations office.

Facts: A. In early July 2023, I emailed HR and Venzon complaining my being treated unfairly by Houser, requesting Venzon and HR to change my training plan, and inviting Venzon to have a meeting with me and the University's Ombudsperson, Venzon and Houser retaliated against me by contacting HR to trigger an unexpected HR investigation in August 2023. I received an "expectation letter" with untruthful accusations and distorted facts after the investigation was completed.

B. In October 2023, I emailed HR and Venzon twice regarding Houser's unfounded accusations of me making "mistakes" at work and using foul language toward me. Venzon retaliated against me by forcing me to work against my doctor's medical restriction note on the morning of Nov. 1st, 2023. HR and Venzon never addressed my complaint about Houser's behavior.

C. On March 15, 2024, Venzon and Houser received my formal allegations from the University's internal EEO office. On March 18, 2024, I received a surprise "performance investigation" meeting invitation from Jaeger (an HR staff member).

D. On March 28th, 2024, I attended a 1.5-hour-long "performance investigation" meeting on campus with Venzon and Jaeger. At that meeting, Jaeger asked me questions about work events that had happened almost one year ago. I tried my best to respond to her questions from memory.

E. On April 8, 2024, Venzon, Jaeger, and I had an on-campus meeting. At that meeting, I was given the termination letter in person. This meeting happened right after I returned to work after a one-week vacation. I asked Venzon why I was terminated. Jaeger answered the question for Venzon:" Because you gave us a general impression that you do not meet the expectation of the position." I asked Venzon to give me examples to show I did not meet the expectation; Jaeger answered the question for Venzon again by shouting loudly at me:" I must end the meeting". I felt wronged and shocked at this meeting. Before I was fired, I submitted my performance review online on March 25, 2024. Venzon did not evaluate me using the University's objective Performance Review system and fired me with a pretext (the March 28, 2024, "performance investigation" meeting). Venzon did not express his concern about my work performance before I was asked to attend the "performance investigation" meeting.

F. From September 2023 to February 2024, our office constantly had bad air incidents. I asked Venzon and HR for an alternative work site as reasonable accommodation due to my sick building syndrome. Venzon disliked my request for accommodation and retaliated against me by interfering with my application to the accommodation process and firing me.

2. Disability discrimination claim in violating ADA

Nik Mac is my HR representative. Adrian works at HR's Faculty and Staff Disability Services Office.

Due to sick building syndrome, I obtained two doctors' notes on Oct. 13 and Oct. 26, 2023, respectively. I communicated my medical needs in writing and showed both doctors' notes to HR (Mac) and Venzon. However, Venzon and Mac asked me to work against my doctors' medical restriction notes multiple times. I followed their order due to fear of losing my job. After being exposed to a workspace triggering my sick building syndrome, my symptoms (heavy eyes, dry cough, smokey throat, smelling gas, and dizzy head) worsened.

Facts: A. Around 8:20 AM, on November 1st, 2023, Venzon appeared suddenly at Cowork Commons (a campus-shared office space for staff and faculty) and forced me to leave the Cowork Commons and meet the student in an office space (triggering my sick building syndrome) and work against my doctor's

medical restriction note. I almost cried and told Venzon: "I emailed my doctor's note to you and Nik(HR), and why are you forcing me to work in an unhealthy work space causing my symptoms? Venzon responded:" I receive hundreds of emails every day, and it is HR's job to deal with your doctor's note. " Fearful of losing my job, I went to the office space where Venzon forced me to use, feeling scared and sad.

B. On Feb. 7th, 2024, at a ZOOM meeting, Venzon and Mac told me my doctor's restriction note was ended and I must return to my old office space to work. I informed both about my sick building syndrome and refused to work in space, causing my symptoms. Venzon shouted at me at the meeting: "You cannot meet students at Cowork Commons in person. You violated Worker Compensation rules, and I must document it," after he learned that a student came to meet with me in a private room at Cowork Commons. I felt intimidated by Venzon's shouting and unfounded blame.

C. At 5:00 PM, on February 12, 2024, Mac emailed me to give me a deadline (by 8:00 AM on Feb. 14th, 2024) to return to the SDS office to work. I refused again due to my medical condition. Mac and Venzon knew that I had sick building syndrome as I had informed them of me having sick building syndrome on Feb-7-2024's Zoom meeting.

D. On Feb. 14th and 15th, 2024, I emailed Mac and Dr. Hartley (The University's occupational health doctor) about the bad air smell in the SDS office and my worsened symptoms; Venzon was copied on the two emails. However, Venzon continued scheduling work meetings in the SDS office. Fearing losing my job, I attended those meetings. Afterward, my symptoms worsened (dry cough and heavy eyes)

E. On the afternoon of Feb. 15, 2024, Venzon insisted I meet with him in the SDS conference room; I had no choice but to feel fearful of losing my job. At the meeting, Venzon told me: "Our office is small. I need you to be in the office when Vickie and I are not around. Your position is not a virtual one," I told Venzon. I followed SOP and applied for reasonable accommodation. Venzon further asked me:' Is HR working with Adrian"? I responded:" I do not know". During the meeting, I was coughing. After the meeting, I felt my eyes heavy and head dizzy. I also felt pressure from Venzon forcing me to work against my doctor's medical restriction note again.

F. On March 7, 2024, Adrian emailed me that " my department" (referring to Venzon) informed him that I wanted to reengage my worker compensation claim, and thus Adrian stopped my accommodation process. Back then, I did not understand why Adrian sent me this email and did not respond to Adrian's email. Later, I learned from the Defendant's position statement that Adrian approved my long-term accommodation. However, Venzon lied to Adrian and canceled my approved accommodation. I never requested a worker compensation claim or contacted the worker compensation department to reengage the worker compensation claim.

G. On April 10th, 2024, around 5:30 PM, Michael (Worker Comp. Claim insurance agent) called me and told me that Dr. Hartley's medical restriction note had never ended and my worker compensation claim was always active. This information from Michael conflicts with Mac's Feb-12-2024 email to me stating that my worker compensation claim was ended, and my medical restriction note was also ended.

I felt that Nik Mac and Mike Venzon played a game with me and forced me to work against my doctor's medical restriction note multiple times. Due to fear of losing my job, I followed their order. After exposing myself to the office space that triggered my sick building syndrome, my symptoms worsened. Thus, the Defendant failed to accommodate me.

3. Disparate treatment, power harassment, and hostile work environment claim in violating Title VII

I joined the SDS office around the middle of April 2023, and a Caucasian staff member, Wollack, joined at the end of May 2023. We both were trained by Houser. However, I felt my work environment hostile and unwelcoming, while Wollack felt the office supportive and warm. Wollack and I held the same

position (entry-level Access Consultant). Houser often blamed me after I followed her work order as a pattern. I am the only person of color in the SDS office. Please read the three-page narrative that I submitted to the EEOC on March 31, , 2024.

Facts:

A. On June 7th, 2023, I emailed Venzon and asked him to buy me a basic mouse with the link to the mouse (15 dollars), Venzon did not respond to my request. Venzon bought expensive chairs and a keyboard for Houser and Wollack.

B. In September and October 2023, I emailed Venzon asking him to schedule regular one-on-one check-in work meetings with me, but Venzon did not respond to my meeting requests. In contrast, Venzon meets with Wollack 1-on-1 regularly for check-in meetings.

C. In late September 2023, due to bad air, a university maintenance staff came to the SDS office to check Houser and Wollack's rooms, but my room was not on the checklist although I also reported bad air in my office to Venzon and Houser. Houser responded: "Your room is a different issue." when I told Houser that I also wanted my room checked on that morning.

D. Wollack was trained to review documents of students' applications, exam services, adaptive furniture, and support students from the University's famous REACH program, but I did not receive the same training as Wollack had. However, I was asked to do work prior to the training, which triggered a lot of undue stress in me.

E. In February 2024, Houser asked me twice to work with my husband's students against the University's avoiding "conflict of interest" policy in spite of my polite objection; however, Houser easily allowed Wollack to be out of such a situation when Wollack indicated the conflict-of-interest issue in her workload. In late Feb. 2024, I emailed Houser about why she kept putting me in such a situation and copied Venzon on the email; neither Venzon nor Houser replied to my email.

F. In early July 2023 and Feb. 14th, 2024, Houser used her student workers to stalk me while Houser was out of the office. Houser did not closely check Wollack's whereabouts.

G. On June 22nd, 2023, Houser slammed the door behind her and shouted at me in my office: "Our conversation is not over yet. This is not how I trained you!" Houser physically restrained me and herself in my tiny office. I felt Houser's behavior intimidating. She did not treat Wollack this way.

H. Starting my training in May 2023, Houser did not allow me to ask work-related questions to David Rooney but allowed Wollack to ask work-related questions to Rooney. I felt Houser kept the job information guarded from me. I brought this issue to Venzon, who responded: "You are Vickie's first trainee, and she wanted you to be perfectly trained by her."

I. In the summer of 2023, Houser did not allow me to lead students' initial meetings independently. Meanwhile, I could not observe other staff members' student meetings unless I got approval from her and Venzon. When Houser was traveling in the summer of 2023, Houser asked me to cancel my students' meeting time blocks. I followed her order. I emailed Venzon to ask myself to be allowed to observe other staff members' student meetings, but Venzon did not reply to my email.

J. In early July 2023, Yisa, a Chinese graduate student worker in the SDS office, approached me in my office and asked: "Nan, did you feel you were discriminated against? I saw Hannah (Wollack) do a lot of things. What do you do every day? Did you feel afraid of Vickie (Houser)?" I told Yisa, "I am not afraid of Vickie." I felt sad after Yisa initiated this conversation with me.

K. In Jan. 2024, Venzon disallowed me to meet with Jordan I. (the REACH program advisor) before I

advised Jordan's students. However, Wollack was allowed to meet with Jordan I. multiple times before she supported REACH program students.

Everyone in the SDS office except me was evaluated by Venzon by using the University's online "performance review "for employees' annual work evaluation,  Venzon fired me by using his self-coined "Performance Investigation" meeting to cover his pretext reason to fire me because I opposed working in a hostile work environment, sought long-term reasonable accommodation, and launched allegations against him and his assistant Houser with the University's internal EEO office.

M. In late June 2023, Houser developed an initial meeting rubric specifically for me shortly after she physically restrained me on June 22, 2023.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

On March 20, 2024, my Charge was initially established by the Chicago District Office over the phone .

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on *(date)*    10/24/2024    .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

I want the court to do the following:

1) To demand that Defendant reinstate me in a similar position without me being supervised by Houser and Venzon. I was fired due to retaliation because I engaged in EEO-protected activities and opposed working in a hostile work environment. Before I was fired, I did not have any disciplinary write-ups or reprimands. I am a top performer. See my attached document titled " Nan's Rebuttal to Level- 2 Administrative Review Meeting". *submitted*

2) To demand that the Defendant award me fringe benefits (health insurance) and back pay (lost wages). My annual salary was USD 45000. My health insurance cost was USD 452 per month. The actual amount is to be decided at trial. I would have received this salary and fringe benefits if I had not been wrongfully discharged.

3) To demand that Defendant compensate me for my emotional distress as compensatory damage of USD 90,000. The hostile work environment I was exposed to caused me to feel chest pain. My husband also felt pain seeing my harsh work situation. He once told me: "He never wanted to go to the University Capitol Centre".

4) To issue injunctions: to demote Venzon and Houser for abusing their power to engage in work bullying me; To demand the University of Iowa to train all employees on work bullying. I do not want others to have this bad experience. I recalled Houser consistently giving me conflicting work instructions and blaming me after I followed her work order. I was confused and felt like walking on eggshells while working under her chain of command. I had to double-check everything at my work feeling fearful of making any mistakes. This feeling was mentally draining.

5) To demand that Defendant pay USD300,000 in punitive damage due to Defendant's reckless discriminatory work practices. I brought Houser's work-bullying behavior to HR's attention in writing, but HR did not take reasonable measures to address my concern and fired me because of retaliation.

6) To award me attorney fees of USD 600 and the court filing fee of USD 405 incurred by the Defendant's wrong done on me. I paid two attorneys for a consultation fee while dealing with my EEOC claims.

7) To demand that Defendant remove the untruthful HR investigation report conducted in August 2023 from my personnel file. This report was biased and failed to see I was in a "fight or flight mode" when I saw Houser showing up at my meeting unannounced. I muted Houser at that ZOOM meeting because I was scared of seeing Houser's face showing up at my meeting unexpectedly. Feeling intimidated by Houser, I muted her and declined *her* to shadow my student meeting. This incident proved that Houser's bullying behavior was so severe that it affected my performance negatively. This incident happened around July 10th, 2023, right after Houser physically restrained me on June 22nd, 2023, and Venzon removed Houser temporarily from shadowing my student meetings on June 26th, 2023.

## VI.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        1/17/2025

Signature of Plaintiff        Nan Li
Printed Name of Plaintiff        NAN LI

## B.    For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address